Filed 10/16/25 In re B.A. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re B.A., et al., Persons Coming Under the Juvenile Court Law. | B338955 |
| _____ | Los Angeles County |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Super. Ct. No. 21CCJP00431B/C |
| Petitioner and Respondent, | |
| v. | |
| R.A., | |
| Objector and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nancy A. Ramirez, Judge. Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Objector and Appellant.

No appearance for Petitioner and Respondent.

A father appeals the juvenile court's exit order denying him tie-breaking authority. We affirm.

The mother and father are married and have two children together: daughter B.A., who was born in January 2021, and son L.A., who was born in March 2022.

In an earlier dependency case from 2021, the Los Angeles County Department of Children and Family Services filed a petition on behalf of B.A., alleging repeated instances of physical violence between the mother and father and marijuana abuse by the father. Both the mother and the father have been arrested on separate occasions for assaulting the other.

After about a year of family maintenance services, the court terminated jurisdiction and released B.A. to her parents in May 2022.

Eight months later, in January 2023, the Department received another referral alleging domestic violence between the mother and the father. At that time, the family had been staying at a transitional housing program. According to the reporting party, the mother got upset when the father returned late from work. While the father was laying in bed, the mother threw a dirty diaper at him. The father threw the diaper back at the mother, and an argument ensued. When the mother tried to leave, the father pushed her onto the bed and put his hands around her neck. L.A. was in the room during the fight between his parents. Law enforcement officers arrested the father, and the mother obtained a temporary emergency protective order against him.

A Department social worker spoke to the mother, who acknowledged a history of domestic violence between her and the father. The mother said she was worried about the father

drinking and driving with the children, and that she had found cannabis wax in his car. The mother did not trust the father to drive, so she drove the children, despite not having a valid driver's license. She also admitted to instigating the fight, explaining that she is undocumented and was trying to get citizenship through the Violence Against Women Act.

The social worker then spoke to the father. He told her he had no intention of continuing a romantic relationship with the mother, but loved their children and would "figure out custody and visits." The father denied abusing alcohol or marijuana.

The mother and children later moved in with their maternal grandmother, P.S. Although the mother had a voucher for Section 8 housing, she was waiting for vacancies in more desirable neighborhoods. The mother was unemployed and did not have a work permit. She was hesitant to apply for public assistance because she did not want immigration authorities to perceive her as a public charge.

When the social worker spoke to P.S., P.S. said she was willing to help the mother, but could not support the mother and her grandchildren on a long-term basis. P.S. wanted the mother to find alternative living arrangements as soon as possible.

Based on her investigation, in February 2023, the social worker filed a petition alleging the parents had failed to protect B.A. and L.A., who were victims of general neglect and were at risk of harm based on the parents' mutual domestic violence and the father's substance abuse.

At the initial hearing, the juvenile court followed the Department's recommendation and ordered both children detained from the parents and placed with a foster family. The

court allowed separate monitored visits for the mother and father three times a week.

In April 2023, the juvenile court held a combined jurisdiction and disposition hearing. By this time, the children had relocated to their paternal grandmother's home. At the hearing, the court sustained the petition's failure-to-protect counts, declared the children dependents of the court, and ordered case plans for the parents. The case plans included parenting classes, individual counseling, and domestic violence programs. The father was also required to submit to random drug testing. Monitored visits would continue and the Department would have discretion to liberalize them.

Over the review period, both parents complied with their case plans and made progress towards reunification. The mother stayed at an adult-only women's shelter and was actively seeking employment. The father stayed with his grandparents and maintained full-time employment. Both parents progressed to unmonitored visits with the children.

Before the review hearing, the Department recommended the court retain jurisdiction over B.A. and L.A., terminate the suitable placement order and place the children in the care of the father and the mother, and order family maintenance services with 50/50 shared custody.

At the six-month review hearing in October 2023, the court followed the Department's recommendations.

During the supervision period, both children did well under the care of the mother and the father. The mother moved from a women's shelter to another temporary shelter, but remained unemployed. The father moved back in with his parents and

4

maintained employment. He also continued to test negative on his drug tests.

Although both parents expressed a desire to co-parent peacefully, there was a breakdown in communication between the mother and the father. The parents bickered over coordinating exchanges. Each parent complained to Department social workers about the other; the mother said that the father did not share information with her and was unresponsive to her texts; the father reported the children were "dirty" when the mother returned them to him.

Accordingly, the Department's April 2024 review report recommended terminating jurisdiction over the children, granting the mother and father joint physical and legal custody but primary physical residence with the father, and for the visitation schedule to continue. The report noted the mother had not demonstrated the ability to provide the children with stable housing.

At the judicial review hearing, the court again followed the Department's recommendations. The father asked for primary physical custody and sole legal custody of the children, or in the alternative, joint legal custody with tie-breaking authority. Finding no legal basis for it, the court denied the father's request for sole legal custody. As for tie-breaking authority, the court stated it would instead "assist the parents in addressing conflict by sending them to mediation so that they can come up with an extremely detailed visitation or custody arrangement since both parents are getting custody." The court noted the parents would need to learn to work together for the benefit of the children and that there was a "long road ahead before they turn 18."

In June 2024, the court held a custody order hearing. After learning the parents were not able to work out a custody schedule through mediation, the court set a schedule for them. In explaining the schedule, the court told the parents: "I am dividing everything evenly. No one is going to get extra time . . . If you wanted accommodations you could have made those arrangements through mediation by coming to an agreement. You were unable to do so. So now I'm making all of the decisions in a manner that I believe is fair to both parents. If you have an issue you can take it up with the Court of Appeal."

On appeal, the father argues it was an abuse of discretion for the court to not award him tie-breaking authority. He claims granting him tie-breaking authority would "minimize co-parenting conflicts" and "create a more peaceful and less contentious parenting environment for the children."

The court's order here was well within its broad discretion to determine custody and visitation. (See *In re J.M.* (2023) 89 Cal.App.5th 95, 112–113.) The record is clear that the court carefully considered the children's best interests in light of the totality of the circumstances. In denying the father's request, the court reasoned that the parents need to learn how to work together for the benefit of B.A. and L.A., and rejected the father's argument that giving him tie-breaking authority would benefit the children. Rather, the court noted the parents' continued refusal to cooperate with each other would be detrimental to B.A. and L.A. The father's disagreement with the court's decision does not mean the court abused its discretion. (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319 [reviewing court will not disturb trial court's custody determination unless appellant clearly

6

establishes the decision was arbitrary, capricious, or patently absurd].)

The father also contends the custody order will prejudice him in a family law court. However, he forfeited this argument by failing to support it with reasoned argument. (See *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721.)

## DISPOSITION

We affirm the challenged custody and visitation order.

WILEY, J.

We concur:

STRATTON, P. J.

UZCATEGUI, J[*]

---

[*] Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.